# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 12, 2011

## DAVID HAMMOND v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C-09-106     Donald H. Allen, Judge**

---

**No. W2010-01716-CCA-R3-PC  - Filed February 6, 2012**

---

A Madison County Circuit Court jury convicted the petitioner, David Hammond, of rape, and he was sentenced to twelve years in the Tennessee Department of Correction. Thereafter, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective. The post-conviction court denied the petition, and the petitioner now appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, David Hammond.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On direct appeal, this court summarized the proof presented at trial as follows:

> [T]he victim testified that on March 29, 2002, she attended a party at her sister's apartment in Jackson, Tennessee. Sequoia Greer, the victim's sister, lived in the same apartment complex as the victim.

The party started around 10:00 p.m. At some point that evening, [the petitioner] showed up at the party. According to the victim, [the petitioner] was not invited. The victim drank approximately seven shots of tequila during the party. The victim went into one of Ms. Greer's bedrooms to go to sleep around 1:30 a.m. She was accompanied to the bedroom by her friend, Ted Ingram. The victim testified that she slept in the bed, fully-clothed, with Mr. Ingram until approximately 2:45 a.m., when Mr. Ingram's "partner" woke him up to leave the party.

The victim testified that the next thing she remembered was waking up "when [she] felt [the petitioner] coming out of [her]." According to the victim, the room was dark when she woke up. She felt someone having sex with her and turned on the lights to find [the petitioner] in the room. The victim's pants and panties were pulled down to her ankles. The victim stated that she was menstruating at the time, and there was blood on the bed sheets. She saw [the petitioner] getting dressed and noticed that he had blood on his pants. [The petitioner] asked her to go to "dinner sometime." The victim did not scream out to anyone when she saw what [the petitioner] was doing. She asked [the petitioner], "What the 'F' just went on?" Then the victim pulled up her pants and left the bedroom. She then exited the apartment and went to her own apartment. Ms. Greer testified that the victim was "very upset and crying and screaming and stuff" when she left the apartment.

When the victim got to her own apartment, she douched and took a bath. The victim then called Ms. Greer to tell her what had happened. The victim went back to Ms. Greer's apartment, but [the petitioner] was no longer there. The victim's friends drove around town, looking for [the petitioner]. When they were unable to locate [the petitioner], the victim drove to the police station to report the rape.

The victim was examined at the hospital for evidence of rape. There was no semen detected after a vaginal swab, but the DNA tests performed on the victim's underwear revealed the presence of [the petitioner's] DNA "along the edge of the crotch

area."

Michelle Lee, [the petitioner's] sister, testified at trial on his behalf. According to Ms. Lee, she and [the petitioner] were invited to the party by Anthony Hawkins, Ms. Lee's cousin. Ms. Lee did not drink any alcoholic beverages at the party. At some point, she overheard the victim say that "somebody is going to get f[***]ed tonight." The victim denied making that statement.

Ms. Lee stated that [the petitioner] fell asleep on the couch and slept there until around 2:45 a.m., when he got up from the couch. At that point, Ms. Lee saw [the petitioner] go into the bedroom where the victim was sleeping. [The petitioner] was going into the room to "get his coat." About five to ten minutes later, Ms. Lee saw the victim leave the bedroom. Contrary to Ms. Greer's testimony, Ms. Lee claimed that the victim did not appear upset when she left the bedroom or the apartment. Ms. Lee did not see any blood on [the petitioner's] pants when he left the bedroom. After leaving the bedroom, [the petitioner] and Ms. Lee went to the kitchen and made a sandwich. The two then left the apartment at approximately 3:30 a.m.

State v. David Harold Hammond, No. W2007-00219-CCA-R3-CD, 2008 WL 465278, at **1-2 (Tenn. Crim. App. at Jackson, Feb. 21, 2008). This court affirmed the petitioner's conviction for rape and the accompanying twelve-year sentence. Id.

Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective (1) by not raising the lack of proof that the petitioner committed the rape by force or coercion as alleged in the indictment, (2) by failing to "stand on [the] Motion for Judgment of Acquittal," (3) by not requesting that the court appoint a DNA expert for the defense, and (4) by failing to pursue DNA evidence establishing that other men had sex with the victim at the party.

At the post-conviction hearing, the petitioner testified that trial counsel was appointed to represent him in 2006. The petitioner stated that he met with trial counsel about four times and that they discussed the State's proof and possible defenses. The petitioner said that everyone was drinking alcohol at the party and that the victim "invited sex" with the petitioner and other men. He told trial counsel that he thought the victim had sex with other men that night.

The petitioner acknowledged that at trial, an expert witness for the State testified that the petitioner's DNA was found on the victim's underwear. The petitioner said that he did not ask trial counsel to hire an expert to conduct further DNA tests. However, he stated that he thought an expert could have told trial counsel that men other than the petitioner had sex with the victim. The petitioner said that the expert found a "partial protocol" on the victim's underwear and that the petitioner believed that "mean[t] it's more than one person's semen." The petitioner acknowledged that trial counsel cross-examined Ted Ingram, who had been at the party, and that Ingram denied having sexual contact with the victim.

The petitioner said that he was charged with rape by force or coercion but that he did not believe the State proved force or coercion. The petitioner said the proof established that the victim was asleep and that a person who is asleep cannot be forced or coerced.

The petitioner stated that at the conclusion of the State's proof, trial counsel made a motion for a judgment of acquittal. The petitioner maintained that trial counsel erred by "failing to stand" on the motion. The petitioner acknowledged that the trial court denied the motion and that he had wanted his brother and sister to testify. The petitioner said that he chose not to testify at trial.

Trial counsel testified that he and the petitioner met approximately three or four times and that they discussed the evidence and defenses. Trial counsel said that the petitioner and the victim were at a party where everyone was drinking alcohol; specifically, the victim drank six or seven shots of tequila. Trial counsel said he established during the cross-examination of the DNA expert that the semen found on the victim's underwear could have been from preejaculatory fluid. Trial counsel said that evidence supported the defense theory that the petitioner and the victim had sexual contact after the victim propositioned the petitioner but that no penetration occurred because the petitioner learned that the victim was menstruating. Trial counsel said that he believed the victim was embarrassed because she had a boyfriend and that she "came up with the story that he had raped her to try to cover what she had done." Trial counsel said that he thought the petitioner had a "pretty good case for the jury."

Trial counsel said that the State conducted DNA testing. Although no DNA was found on the victim, the petitioner's DNA was found on the victim's underwear. Trial counsel explained that the DNA expert found twelve out of fourteen "markers" in the DNA from the victim's underwear. Trial counsel explained that this "partial profile" was sufficient to identify the petitioner as the contributor. The petitioner told counsel that he thought more than one man had sex with the victim that night. Trial counsel opined that proof of other men having sex with the victim that night would have definitely influenced the jury. However, there was no evidence of another person's DNA on the victim or her clothing. Additionally,

-4-

the other men around the victim that night denied having sexual contact with her. Therefore, trial counsel opined that a defense DNA expert would not have made a difference. Trial counsel said that the only thing he might have done differently was to have the petitioner testify at trial.

Trial counsel stated that he made motions for a judgment of acquittal at the close of the State's case-in-chief and the close of all the proof. The trial court denied the motions. He and the petitioner did not discuss whether to put on defense proof after the denial of the first motion because they had always anticipated calling the petitioner's sister and brother to refute the victim's testimony. Trial counsel said that he thought the petitioner's siblings were "good witnesses." Trial counsel stated that the sister's testimony was beneficial because she testified that the victim said she was going to have sex with someone on the night in question. However, he noted that the victim denied making that statement. Trial counsel said that he believed they proved that the petitioner and the victim had consensual sexual contact but that they did not have intercourse because the petitioner discovered the victim was menstruating.

At the conclusion of the hearing, the post-conviction court found that the petitioner failed to prove that trial counsel was ineffective. The petitioner appeals this ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

On appeal, the petitioner contends that trial counsel "should have let his case go to the jury without providing a defense[, thereby] . . . standing on the Motion for Judg[ment] of Acquittal." Additionally, the petitioner stated that if trial counsel "hired a DNA expert . . . the outcome of his case would have been different."

Trial counsel testified that there was no proof that the DNA of anyone other than the petitioner was found on the victim or the victim's clothes. Trial counsel stated that a DNA expert would, therefore, not have made a difference. The petitioner did not provide proof at the post-conviction hearing concerning any DNA evidence. Regarding the decision to proceed with defense witnesses, the post-conviction court noted that the presentation of defense witnesses "supported the [petitioner's] defense" that he was at the party but that he did not sexually penetrate the victim. Moreover, we note that on direct appeal this court examined the sufficiency of the evidence and affirmed the petitioner's rape conviction. Hammond, No. W2007-00219-CCA-R3-CD, 2008 WL 465278, at *3. The post-conviction court found that "[t]here is no credible proof to support the claim that [trial counsel] was deficient in his representation or performance or that his representation or performance prejudiced the [petitioner] in any way." Based upon the record before us, we agree with the post-conviction court that petitioner has failed to show he is entitled to relief.

### III. Conclusion

In sum, we conclude that the petitioner failed to establish that his trial counsel was ineffective and that the post-conviction court correctly denied post-conviction relief.

_____

NORMA McGEE OGLE, JUDGE